## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| CHARLES BENSON, on behalf of himself and all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>CHUNGHWA PICTURE TUBES, LTD.; TATUNG COMPANY OF AMERICA, INC.; L.G. ELECTRONICS, INC.; LG PHILIPS DISPLAY USA, INC.; MATSUSHITA ELECTRIC INDUSTRIAL CO. LTD.; PANASONIC CORPORATION OF NORTH AMERICA; KONINKLIJKE PHILIPS ELECTRONICS N.V.; PHILIPS ELECTRONICS NORTH AMERICA CORPORATION; SAMSUNG ELECTRONICS CO.; SAMSUNG ELECTRONICS AMERICA, INC.; SAMSUNG SDI CO. LTD. f/k/a SAMSUNG DISPLAY DEVICE CO.; TOSHIBA CORPORATION; TOSHIBA AMERICA ELECTRONICS COMPONENTS, INC.; TOSHIBA AMERICA INFORMATION SYSTEMS, INC.; MT PICTURE DISPLAY COMPANY; MT PICTURE DISPLAY CORPORATION OF AMERICA (New York); MT PICTURE DISPLAY CORPORATION OF AMERICA (Ohio) and LP DISPLAYS,<br><br>　　　　Defendants. | Case No.<br><br><br>CLASS-ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Charles Benson, individually and on behalf of the Class described below, brings this action against Defendants for violation of Tennessee's antitrust laws and for unjust enrichment and alleges as follows:

## I. NATURE OF THE CASE

1.　Plaintiff brings this lawsuit as a class action on behalf of individuals and entities who purchased indirectly cathode-ray tubes ("CRTs") and products containing CRTs (jointly, "CRT

Products") in the Tennessee from Defendants during the period from at least May 1,1998 through the present (the "Class Period"). CRTs are used in a number of products, including but not limited to, computer monitors and televisions. As used herein, "CRT Products" refers to CRTs and products containing CRTs manufactured by any of the Defendants or their subsidiaries or affiliates.

    2.     During the Class Period, Defendants' collusive behavior artificially inflated the price of CRT Products. In particular, Defendants participated in cartel behavior and colluded to fix the prices of CRT Products.

    3.     Throughout the Class Period, Defendants' conspiracy was intended to, and did, moderate the downward price pressures on CRT Products caused by the market entry and rapid penetration of more technologically advanced competitive products. As explained in further detail below, liquid crystal displays ("LCD") and plasma display panels ("PDP") were used in the same primary applications as CRTs and presented significant advantages over CRT Products. LCD, PDP and products containing LCD or PDP will collectively be referred to as flat panel display products ("FPD Products"). Many of the Defendants, in addition to manufacturing, distributing and selling CRT Products, were also manufacturers, distributors, and sellers of FPD Products. Defendants who participated in both the market for CRT Products and the market for FPD Products will be specifically identified below.

    4.     Because of Defendants' unlawful conduct and conspiracy, Plaintiff and other members of the Class paid artificially inflated prices for CRT Products. Plaintiff and other members of the Class who purchased these products have therefore been damaged by Defendants' illegal actions.

-2-

## II.  JURISDICTION AND VENUE

5.     This Court has diversity subject-matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005, which amends 28 U.S.C. §1332 to add a new subsection (d) conferring federal jurisdiction over class actions where, as here, "any member of a class of plaintiffs is a citizen of a State different from any defendant" and the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. '1332(d)(2) and (6).  This Court also has jurisdiction under 28 U.S.C. §1332(d) because "one or more members of the class is a citizen of a state within the U.S. and one or more of the Defendants is a citizen or subject of a foreign state."  The Court also has personal jurisdiction over the parties because Plaintiff submits to the jurisdiction of the Court and Defendants systematically and continually conduct business here and throughout the U.S., including marketing, advertising, and sales directed to residents of this District.

6.     Venue is proper in this District pursuant to 28 U.S.C. §1391(a) and (c) because Defendants as corporations are "deemed to reside in any judicial district in which [they are] subject to personal jurisdiction."

## III.  PARTIES

7.     Plaintiff Charles Benson is a citizen and resident of Newport in Cocke County, Tennessee, who indirectly purchased Defendants' CRT Products for end use during the Class Period.

8.     Defendant Chunghwa Picture Tubes, Ltd. ("Chunghwa") is a Taiwanese company with its principal place of business at 1127 Heping Road, Bade City, Taoyuan, Taiwan.  It is a partially owned subsidiary of Tatung Company, a consolidated consumer electronics and information technology company based in Taiwan. Chunghwa's Board of Directors includes representatives from Tatung Company.  The Chairman of Chunghwa, Weishan Lin, is also the Chairman and General

Manager of Tatung Company. During the Class Period, Chunghwa manufactured, sold, and distributed CRT Products to customers throughout the U.S., including in Tennessee. Chunghwa also manufactured, distributed and sold FPD Products in the U.S., including in Tennessee, during the Class Period.

9.     Defendant Tatung Company of America, Inc. is a California corporation with its principal place of business at 2850 El Presidio Street, Long Beach, California. Tatung Company of America, Inc. is a wholly-owned and controlled subsidiary of Tatung Company. During the Class Period, Tatung Company of America, Inc. manufactured, sold, and distributed CRT Products to customers throughout the U.S., including in Tennessee. Tatung Company of America, Inc. also manufactured, distributed and sold FPD Products in the U.S., including in Tennessee, during the Class Period.

10.     Defendant LG Electronics, Inc. ("LGE") is a manufacturer of CRT Products with its global headquarters located at LG Twin Towers 20, Yeouido-dong, Yeongdeungpo-gu, Seoul, Korea 150-721. During the Class Period, LGE manufactured, sold and distributed CRT Products to customers throughout the U.S., including in Tennessee. LGE also manufactured, distributed and sold FPD Products in the U.S., including in Tennessee, during the Class Period.

11.     Defendant Matsushita Electric Industrial Co., Ltd ("Matsushita") is a Japanese company and has its global headquarters at 1006 Kadoma, Osaka 571-8501, Japan. Matsushita is the parent company of Panasonic Corporation of North America, JVC Company of America, and Victor Company of Japan, Ltd. During the Class Period, Matsushita manufactured, sold and distributed CRT Products to customers throughout the U.S. Matsushita also manufactured, distributed and sold FPD Products in the U.S., including in Tennessee, during the Class Period.

-4-

12.     Defendant Panasonic Corporation of North America ("Panasonic") is a subsidiary of Defendant Matsushita and oversees its North American business operations, including sales. Defendant Panasonic has its global headquarters at 1 Panasonic Way, Secaucus, New Jersey, 07094. During the Class Period, Panasonic manufactured, sold and distributed CRT products to customers throughout the U.S., including in Tennessee. A substantial portion of the CRTs produced by MT Picture Displays Co., Matsushita's subsidiary, went to Panasonic for Panasonic's production of CRT Products. Panasonic also manufactured, distributed and sold FPD Products in the U.S., including in Tennessee, during the Class Period.

13.     Defendant Koninklijke Philips Electronics N.V. ("Koninklijke") has its global headquarters at Breitner Center Amstelplein 2, Amsterdam 1096 BC, Netherlands. During the Class Period, Koninklijke manufactured, sold and distributed CRT Products to customers throughout the U.S., including in Tennessee. Koninklijke also manufactured, distributed and sold FPD Products in the U.S., including in Tennessee, during the Class Period.

14.     Defendant Philips Electronics North America Corporation ("Philips Electronics NA"), is a manufacturer of CRT Products. Defendant Philips Electronics NA has its global headquarters at 1251 Avenue of the Americas, New York, New York 10020. During the Class Period, Philips Electronics NA manufactured, sold and distributed CRT Products to customers throughout the U.S., including in Tennessee. Philips Electronics NA also manufactured, distributed and sold FPD Products in the U.S., including in Tennessee, during the Class Period.

15.     Defendant LG Philips Display USA, Inc. ("LGPD"), is a manufacturer of CRT Products and is a subsidiary of Philips Electronics NA. Defendant LG Philips Display USA, Inc. has its global headquarters at 300 W Morgan Rd, Ann Arbor, MI 48108-9108, U.S. During the Class

Period, LGPD manufactured, sold and distributed CRT Products to customers throughout the U.S., including in Tennessee.

16.     Defendant Samsung Electronics Co., Ltd. ("Samsung Electronics") is a Korean company with its principal place of business at Samsung Main Building, 250, Taepyeongno 2-ga, Jung-gu, Seoul 100-742, Korea. It is the world's largest producer of CRT Products. During the Class Period, Samsung Electronics manufactured, sold, and distributed CRT Products to customers throughout the U.S., including in Tennessee. Samsung Electronics also manufactured, distributed and sold FPD Products in the U.S., including in Tennessee, during the Class Period.

17.     Defendant Samsung SDI Co., Ltd. ("Samsung SDI") formerly known as Samsung Display Device Co., has its global headquarters at Samsung Life Insurance Bldg 150, Seoul 100-716, Korea. During the Class Period, Samsung SDI manufactured, sold and distributed CRT Products to customers throughout the U.S., including in Tennessee. Samsung SDI also manufactured, distributed and sold FPD Products in the U.S., including in Tennessee, during the Class Period.

18.     Defendant Samsung Electronics America, Inc. ("Samsung America") is a New York corporation with its principal place of business at 105 Challenger Road, Ridgefield Park, New Jersey. Samsung America is a wholly-owned and controlled subsidiary of Defendant Samsung Electronics Company, Ltd. During the class Period, Samsung America sold and distributed CRT Products manufactured by Samsung Electronics Company, Ltd. to customers throughout the U.S., including in Tennessee. Samsung America also sold and distributed FPD Products in the U.S., including in Tennessee, during the Class Period.

19.     Defendants Samsung Electronics Company, Ltd., Samsung SDI Co., Ltd., and Samsung America are referred to collectively herein as "Samsung."

20.    Defendant Toshiba Corporation is a Japanese company with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan. During the Class Period, Toshiba Corporation manufactured, sold, and distributed CRT Products to customers throughout the U.S., including in Tennessee. Toshiba Corporation also manufactured, distributed and sold FPD Products in the U.S., including in Tennessee, during the Class Period.

21.    Defendant Toshiba America Electronics Components, Inc. is a California corporation with its principal place of business at 19900 MacArthur Boulevard, Suite 400, Irvine, California. Toshiba America Electronics Components, Inc. is a wholly-owned and controlled subsidiary of Toshiba America, Inc., a holding company for Defendant Toshiba Corporation. During the Class Period, Toshiba America Electronics Components, Inc. sold and distributed CRT Products manufactured by Toshiba Corporation to customers throughout the U.S., including in Tennessee. Toshiba America Electronic Components also sold and distributed FPD Products manufactured by Toshiba Corporation in the U.S., including in Tennessee, during the Class Period.

22.    Defendant Toshiba America Information Systems, Inc. is a California corporation with its principal place of business at 9470 Irvine Blvd., Irvine, California. Toshiba America Information Systems, Inc. is a wholly-owned and controlled subsidiary of Toshiba America, Inc., a holding company for Defendant Toshiba Corporation. During the Class Period, Toshiba America Information Systems, Inc. sold and distributed CRT Products manufactured by Toshiba Corporation to customers throughout the U.S., including in Tennessee. Toshiba America Information Systems also sold and distributed FPD Products manufactured by Toshiba Corporation in the U.S., including in Tennessee, during the Class Period.

-7-

23.    Defendants Toshiba Corporation, Toshiba America Electronics Components, Inc., and Toshiba America Information Systems, Inc. are referred to collectively herein as "Toshiba."

24.    Defendant MT Picture Display Company is a wholly-owned and controlled subsidiary of Defendant Matsushita organized under the laws of Japan with its principal place of business located at Rivage Shinagawa, 1-8, Konan 4-chome, Minato-ku, Tokyo 108-0075, Japan. Prior to April 2007, MT Picture Display Company was a joint venture between Matsushita Electric Industrial Co., Ltd. and Toshiba Corporation named Matsushita Toshiba Picture Display Co. Ltd. This joint venture was created in 2003 and integrated the CRTs operations of its parents. During the Class Period, both MT Picture Display and its predecessor Matsushita Toshiba Picture Display Co. Ltd. sold and distributed CRT Products to customers throughout the U.S., including in Tennessee.

25.    Defendants MT Picture Display Corporation of America (New York) and MT Picture Display Corporation of America (Ohio) were subsidiaries of MT Picture Display Company. Both subsidiaries were incorporated in Maryland and with their principal place of business located at 300 East Lombard Street, Baltimore, MD 21202. During the Class Period, MT Picture Display Corporation of America (New York) and MT Picture Display Corporation of America (Ohio) sold and distributed CRT Products to customers throughout the U.S., including in Tennessee.

26.    Defendant LP Displays (formerly known as LG Philips Display), a joint venture between LG Electronics and Koninklijke Philips Electronics, is organized under the laws of Hong Kong with its principal place of business located at Corporate Communications, 6th Floor, ING Tower, 308 Des Voeux Road Central, Sheung Wan, Hong Kong. During the Class Period, LP Displays sold and distributed CRT Products to customers throughout the U.S., including in Tennessee.

27.    Defendants committed the acts alleged in this complaint through their officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of each defendant's business or affairs.

28.    Defendants' unlawful and intentional concerted actions have severely damaged and will continue to damage Plaintiff and the members of the classes they seek to represent.

## IV. CO-CONSPIRATORS AND AGENCY

29.    Defendants, along with certain other persons, firms, corporations and entities, are co-conspirators in the violations and conspiracies alleged in this Complaint. These co-conspirators have performed acts and made statements in furtherance of the antitrust violation and conspiracies alleged herein.

30.    At all relevant times, each Defendant ratified and/or authorized the wrongful acts of each of the other Defendants.  Defendants, and each of them, are individually sued as participants and as aiders and abettors in the improper acts, plans, schemes and transactions that are the subject of this Complaint.  Defendants participated as numbers of the conspiracy or acted with or in furtherance of it, or aided or assisted in carrying out its purposes alleged in this Complaint, and have performed acts and made statements in furtherance of the violations and conspiracy.

31.    At all times, each Defendant was the agent of the other Defendants and in committing the violations and conspiracies alleged in this Complaint was acting within the course and scope of that agency and with the permission and consent of the principals.

## V. CLASS-ACTION ALLEGATIONS

32.    Plaintiff brings this action both on behalf of himself and on behalf of the following

Class pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All persons and business entities in Tennessee that indirectly purchased CRT Products manufactured, sold, or distributed by Defendants, other than for resale, from May 1, 1990 to present.

> Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any judicial officers presiding over this action.

33.    Plaintiff has met the requirements of Rules 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) of

the Federal Rules of Civil Procedure.

34.    Plaintiff does not know the exact size class, since this information is in Defendants'

exclusive control. But based on the nature of the trade and commerce involved, Plaintiff believes

that the class numbers in the millions and that the class members are geographically dispersed

throughout Tennessee. Therefore, joinder of all class members would be impracticable, and class

treatment is the superior method for fairly and efficiently adjudicating this controversy.

35.    Plaintiff's claims are typical of other class members' claims because Plaintiff was

injured through the uniform misrepresentations and omissions described and paid supra-competitive

prices for CRT Products without having been informed that he was paying illegal and improper

prices.    Accordingly, by proving his own claim, Plaintiff will presumptively prove the class

members' claims.

-10-

36.    Common legal and factual questions exist, such as:

a.    Whether Defendants conspired to fix, raise, maintain, or stabilize the prices of CRT Products marketed, distributed, and sold in Tennessee;

b.    Whether Defendants conspired to manipulate and allocate the market for CRT Products marketed, distributed, and sold in Tennessee;

c.    The existence and duration of Defendants' horizontal agreements to fix, raise, maintain, or stabilize the prices of CRT Products marketed, distributed, and sold in Tennessee;

d.    The existence and duration of Defendants' horizontal agreements to manipulate and allocate the market for CRT Products marketed, distributed, and sold in Tennessee;

e.    Whether each Defendant was a member of, or participated in, the arrangement, contract, or agreement to fix, raise, maintain, or stabilize the prices of CRT Products marketed, distributed, and sold in Tennessee;

f.    Whether each Defendant was a member of, or participated in, the arrangement, contract, or agreement to allocate the market for CRT Products marketed, distributed, and sold in Tennessee;

g.    Whether Defendants' conspiracy was implemented;

h.    Whether Defendants took steps to conceal their conspiracy from Plaintiff and the class members;

i.    Whether Defendants' conduct caused injury in fact to the business or property of Plaintiff and the class members, and if so, the appropriate classwide measure of damages;

j.    Whether the agents, officers or employees of Defendants and their co-conspirators participated in telephone calls, meetings, and other communications in furtherance of their conspiracy; and

k.    Whether the purpose and effect of the acts and omissions alleged was to fix, raise, maintain, or stabilize the prices of CRT Products marketed, distributed, and sold in Tennessee, and to manipulate and allocate the market for CRT Products marketed, distributed, and sold in Tennessee.

-11-

37.    Plaintiff can and will fairly and adequately represent and protect the class members' interests and has no interests that conflict with or are antagonistic to the class members' interests. Plaintiff's attorneys are experienced and competent in complex-class- action and consumer-antitrust litigation.

38.    Class certification of the proposed class is appropriate under Rule 23(b)(3) of the Federal Rules of Civil Procedure because a class action is the superior procedural vehicle for the fair and efficient adjudication of the claims asserted given that:

a.    Common questions of law and fact overwhelmingly predominate over any individual questions that may arise among or within the respective, alternative classes and, consequently, enormous economies to the court and parties exist in litigating the common issues on a classwide basis or, alternatively, bases, instead of on a repetitive individual basis or, alternatively, bases;

b.    Each individual class member's damage claim is too small to make individual litigation an economically viable alternative, and few class members have any interest in individually controlling the prosecution of separate actions;

c.    Class treatment is required for optimal deterrence and compensation and for limiting the court-awarded reasonable legal expenses incurred by class members; and

d.    Despite the relatively small size of each individual class member's claim, the aggregate volume of their claims, whether considered in one class, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost effective basis, especially when compared with repetitive individual litigation, and no unusual difficulties are likely to be encountered in this class action's management in that all legal and factual questions are common to the class or, alternatively, classes.

39.    Class certification is appropriate pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure because prosecution of separate actions would create a risk of adjudication with respect to individual class members, which may as a practical matter, dispose of other class

members' interests who aren't parties to the adjudication or which may substantially impair or impede their ability to protect their interests. Separate actions prosecuted by individual class members would also create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants.

40.    Class certification is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendants have acted on grounds generally applicable to the class' members.

41.    Plaintiff's claims are typical of the associated class members' claims because Defendants injured Plaintiff and the class members in the same manner (i.e., Plaintiff and the class members were forced to pay supra-competitive prices for CRT Products).

## VI.  TRADE AND COMMERCE

42.    During the Class Period, each Defendant, or one or more of its subsidiaries, sold CRT Products in the U.S., including into Tennessee, in a continuous and uninterrupted flow of interstate commerce and foreign commerce, including through and into this judicial district.

43.    The business activities of the Defendants substantially affected interstate trade and commerce in the U.S., including Tennessee, and caused antitrust injury in the U.S., including in Tennessee.

## VII.  FACTUAL ALLEGATIONS

### A.    CRT Technology

44.    CRT technology has been in use for more than 100 years. The basic cathode-ray tube consists of three elements:  The envelope, the electron gun, and the phosphor screen.



**Cross-sectional representation of a cathode ray tube**

*Source: DIYcalculator.com, available at <u>www.diycalculator.com/sp-console.shtml.</u>*

45.    CRTs are manufactured in several standard sizes, including 17 inch, 19 inch, 27 inch, and 32 inch.  CRTs manufactured by Defendants are interchangeable with one another.

**B.    Trends within the CRT Products Market and Increased Competition from FPD Products**

46.    The worldwide market for CRT Products is and has been large.  In 1997, the worldwide CRTs market exceeded $24 billion in sales.

47.    At the beginning of the Class Period, CRTs were the dominant display technology worldwide.  For example, in 1997, 99.3% of all computer monitors sold worldwide contained CRTs. In 2005, approximately 47 million CRT monitors were sold worldwide, and approximately 20.3% of these were sold in the U.S.

48.    Although the value of all display materials shipped worldwide is projected to rise at an average annual growth rate of 12.8% by 2010, worldwide demand for CRT Products is declining overall because of the growing popularity of FPD Products which are being used in place of CRT Products.    (<http://www.bccresearch.com/RepTemplate. cfm?reportID=552&RepDet=HLT&cat=smc&target=repdet...11/13/2007>).  CRT Products' share of the market declined precipitously in the U.S. where FPD Products achieved more rapid market penetration.

49.    FPD Products may be used to produce the same image as CRT Products but also have many important advantages over CRT Products.  For example, FPD Products are less bulky, require less energy, are easier to read, and do not flicker.

50.    In 1995, recognizing the increasing significance of FPD technologies, Korean manufacturers Samsung and LG Electronics entered the FPD Product market, leading to a surge in FPD Product manufacturing capacity.

51.    The market share of CRT Products declined as other newer technologies emerged and were brought to market. As demonstrated in the chart below, by 1998, FPD Products had already achieved 32% of the U.S. market for CRT Products. Penetration by FPD Products is projected to reach 96% by 2009. FPD Products' global penetration has not been as dramatic as it was in the U.S. due to the continued popularity of lower-priced CRT Products in China, India, and South America.



*Source: David Hsieh, Flat Panel Display Market Outlook, DisplaySearch Presentation, Nov. 5, 2005.*

52.    CRT TVs currently account for only a minority share of television set revenues in North America (37.3%), Japan (9.5%) and Europe (31.0%). Naranjo, *The Global Television Market*, DisplaySearch Report, p. 19.

53.    During the Class Period, while demand for CRT Products continued to fall in the U.S., Defendants' conspiracy was effective in moderating the normal downward pressures on prices for CRT Products caused by the entry of the new generation of competing technologies. Indeed, during the Class Period, there were not only periods of unnatural and sustained price stability, but there were also inexplicable increases in the prices of CRTs, despite declining demand due to approaching obsolescence of CRTs caused by the emergence of a new, superior, substitutable technology.

54.    These periods of price stability and price increases for CRTs are fundamentally inconsistent with a competitive market for a product where demand is rapidly decreasing because of the introduction of new superior technologies.

**C.    Structure of the CRT Product Industry**

55.    The CRT Product industry is characterized by a number of structural features that facilitate collusion, including market concentration, the consolidation of manufacturers, multiple interrelated business relationships, significant barriers to entry, and interchangeability of products.

56.    Defendant Samsung SDI has the largest market share of any CRT Products manufacturer at this point in time. In 2000, Defendant Samsung SDI had 18% of the global CRTs market. In 2002, Samsung SDI had 21.8% of the global market for CRT monitors. In 2004, Samsung SDI had a 30% share of the global CRTs market.

57.    Defendant LP Displays (formerly LG.Philips Displays) has the second largest share of the CRTs market. In 2004, LG.Philips Displays held 27% of the global market for CRT.

58.    Defendant MT Picture Display (formerly Matsushita Toshiba Display Co.) is also a major player in the CRTs market. In 2004, Matsushita Toshiba Picture Display Co. held 9% of the global market for CRTs.

59.    Defendant Chunghwa Picture Tubes held 21.7% of the global CRTs market in 1999.

60.    In 2004, Defendants Samsung SDI, LP Displays, MT Picture Display, and Chunghwa Picture Tubes maintained a collective 78% of the global CRTs market.

61.    The market for CRT Products is subject to high manufacturing and technological barriers to entry. Efficient fabrication plants are large and costly and require years of research, development and construction. Technological advances have caused Defendants to undertake significant research and development expenses.

62.    The CRT Products market has also been subject to substantial consolidation and multiple interrelated business relationships during the Class Period. Matsushita Electric Industrial Co. Ltd. and Toshiba Corporation combined their efforts by forming Defendant MT Picture Display Company. At the time of the formation of MT Picture Display, Matsushita and Toshiba had been the fourth and sixth largest CRT manufacturers in the world. This joint venture combined the entire CRT operations of both parent companies. MT Picture Display Company specialized in the

manufacture of CRTs above 30 inches, supplying some 950,000 units annually to the North American market.

63.    In November 2000, Defendants LG Electronics and Koninklijke Philips Electronics agreed to enter a 50/50 joint venture that merged their CRT operations. The resulting joint venture, originally named LG.Philips Displays, and renamed LP Displays in 2007, entered the market with a 25% share, making it the second largest CRTs manufacturer only behind Samsung SDI at the time.

64.    In 2005, Samsung SDI and LG.Philips Displays entered into an agreement to share parts with respect to CRTs in an effort to boost their combined market share.

65.    Defendants sell their CRT Products through various channels, including to manufacturers of electronic products and devices, and to resellers of CRT Products, and incorporate CRTs into their own manufactured products, which are then sold directly to consumers.

**D.    International Antitrust Investigations**

66.    Competition authorities in the U.S., Europe, Japan and South Korea recently engaged in coordinated actions, including raids, targeting the unlawful CRT Products cartel alleged in this Complaint. On November 9, 2007, the Reuters news agency reported:

> Antitrust authorities in Europe and Asia raided a Matsushita Electric Industrial Co. Ltd. unit and other cathode ray tube markers on suspicion of price fixing, weighing on the share of the Panasonic maker.

>                    *        *        *

> Matsushita confirmed Japan's Fair Trade Commission (FTC) had begun a probe of its cathode ray tube unit. MT Picture Display Co. Ltd., while Samsung SDI Co. Ltd. said South Korea's FTC had started an investigation into its CRT business.

www.reuters.com/article/mergersNews/idUSL0890850720071109.

-19-

67.     On November 9, 2007, the European Commission confirmed in Brussels that "on November 8 Commission officials carried out unannounced inspections at the premises of manufacturers of cathode ray tubes." The European Commission's announcement continued stating, "The Commission has reason to believe that the companies concerned may have violated EC Treaty rules on cartels and restrictive business practices."

68.     On November 12, 2007, Chunghwa Picture Tubes, Ltd. confirmed that it had received a subpoena from a California district court relating to CRTs. A federal grand jury operating under the auspices of the U.S. Department of Justice, Antitrust Division ("DOJ") through its San Francisco office issued the subpoena.

69.     On November 21, 2007, Koninklijke Philips Electronics, N.V. reported that it and its joint venture with LG Electronics, LP Displays, are also targets of the coordinated investigation into collusive practices and other antitrust violations in the CRTs market.

70.     The Defendants include known recidivist antitrust violators. Samsung, for example, was fined $300 million by the DOJ in October 2005 for participating in a conspiracy to fix prices for Dynamic Random Access Memory. It is also under investigation by the DOJ (along with some of the other Defendants, including Toshiba) for fixing prices of Static Random Access Memory. Samsung and Toshiba are also being investigated for collusion among manufacturers of NAND flash memory.

71.     Several Defendants, including Samsung and a joint venture between LG Electronics and Koninklijke Philips Electronics, are targets of a coordinated investigation by the DOJ and antitrust authorities in Europe, Japan and South Korea in connection with anticompetitive conduct in the market for LCD Products. Because LCD Products and CRT Products are used in the same

primary applications, collusion with respect to CRT Product prices would bolster these same Defendants' LCD pricing cartel. Keeping CRTs prices artificially inflated also would serve both to increase profits on remaining CRTs sales while protecting LCD prices.

## VIII.  FRAUDULENT CONCEALMENT

72.     Plaintiff and members of the Class did not discover and could not discover through the exercise of reasonable diligence the existence of the conspiracy alleged herein any earlier than November 9, 2007 when it was first publicly reported that manufacturers of CRT Products were under investigation by antitrust authorities in Europe, Japan, and South Korea for conspiring to fix the prices of CRT Products.

73.     Because Defendants' agreements, understandings, and conspiracies were kept secret until November 9, 2007, Plaintiff and members of the Class before that time were unaware of Defendants' unlawful conduct alleged herein, and they did not know before that time they were paying artificially high prices for CRT Products throughout the U.S., including in Tennessee, during the Class Period.

74.     The affirmative acts of the Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

75.     By its very nature, Defendants' price fixing conspiracy was inherently self-concealing. The CRT industry is not exempt from antitrust regulation, and thus, before November 9, 2007, Plaintiff reasonably considered it to be a well-regulated competitive industry.

76.     In the context of the circumstances surrounding Defendants' pricing practices, Defendants' acts of concealment were more than sufficient to preclude suspicion by a reasonable person that Defendants' pricing was collusive and conspiratorial. Accordingly, a reasonable person

-21-

under the circumstances would not have been alerted to investigate the legitimacy of Defendants' prices before November 9, 2007.

77.    Plaintiff and members of the Class could not have discovered the alleged contract, conspiracy, or combination at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy.

78.    Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiff and members of the Class had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until November 9, 2007, when reports of the investigations into price fixing in the CRT industry were first publicly disseminated.

79.    None of the facts or information available to Plaintiff and members of the Class prior to November 9, 2007, if investigated with reasonable diligence, could or would have led to the discovery of the conspiracy alleged herein prior to November 9, 2007.

80.    As a result of the self-concealing nature of the conspiracy and the active concealment of the conspiracy by Defendants and their co-conspirators, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## IX.  CAUSES OF ACTION

## COUNT I

## VIOLATION OF THE TENNESSEE TRADE PRACTICES ACT

81.     Plaintiff incorporates and re-alleges paragraphs 1 – 80.

82.     From at least May 1, 1998 to present Defendants entered into arrangements, contracts, and agreements to fix prices of and allocate markets for CRT Products, which arrangements, contracts, and agreements lessened full and free competition in violation of the TTPA.

83.     The TTPA permits any person injured indirectly, like Plaintiff and Tennessee class members, to seek redress for their injuries arising out of illegal conspiracies.  Specifically, the TTPA provides that:

> Any person who is injured or damaged by any such arrangement, contract, agreement, trust, or combination described in this part may sue for and recover, in any court of competent jurisdiction, from any person operating such trust or combination the full consideration or sum paid by the person for any goods, wares, merchandise, or articles, the sale of which is controlled by such combination or trust.[1]

84.     In *Freeman Indus., LLC v. Eastman Chemical Co.*,[2] the Tennessee Supreme Court ruled that the TTPA was triggered not by anti-competitive conduct but by "the effect of the anti-competitive conduct."[3] The Supreme Court also held that the TTPA's applicability, whether invoked by Tennessee residents or non-residents, should be judged by "whether the alleged anti-competitive conduct affects Tennessee trade or commerce to a substantial degree."[4]

---

[1] *Supra* note 2.

[2] *Supra* note 3.

[3] *Supra* note 4.

[4] *Supra* note 5.

85.     During the Class Period, Defendants' illegal conduct substantially affected Tennessee trade and commerce and caused injured consumers in Tennessee.

86.     Due to Defendants' price-fixing and market-allocation activities, CRT Products' prices increased illegally in Tennessee despite fluctuations in its cost of production.

87.     During the Class Period, CRT Products' prices did not follow the laws of supply and demand existing in competitive markets, including markets in Tennessee.

88.     Defendants' arrangement, contract, or agreement to fix, raise, maintain, or stabilize the prices of CRT Products marketed, distributed, or sold in Tennessee and to manipulate and allocate the market for CRT Products marketed, distributed, or sold in Tennessee had the following substantial effects on Tennessee trade and commerce:

a.     The price of CRT Products indirectly purchased by Plaintiff and other Tennessee class members was fixed, raised, maintained, and stabilized at inflated, artificial and non-competitive levels;

b.     Plaintiff and other Tennessee class members lost profits and were deprived of free and open competition in the purchase of CRT Products;

c.     Competition in the sale of CRT Products was restrained in Tennessee; and

d.     Plaintiff and other Tennessee class members paid higher prices for CRT Products than they would have paid absent Defendants' conspiracy.

89.     During the Class Period, Plaintiff and other Tennessee class members indirectly purchased millions of dollars of Defendants' CRT Products in Tennessee from Defendants.  By reason of Defendants' TTPA violations, Plaintiff and the other Tennessee class members paid significantly more for CRT Products than they would have paid absent Defendants' illegal combination and conspiracy, and, as a result, Plaintiff and the other Tennessee class members were

injured in their businesses and property and have suffered damages in presently undetermined amounts.

90.    Defendants' conspiracy further substantially affected Tennessee trade and commerce because Defendants, either directly or through their agents, engaged in the following activities in or affecting Tennessee:

      a.    Transacted CRT Products business in Tennessee;

      b.    Contracted to supply or obtain goods or revenue related to their CRT Products business in Tennessee;

      c.    Intentionally availed themselves of the benefits of doing CRT Products business in Tennessee;

      d.    Produced, promoted, sold, marketed, and/or distributed CRT Products in Tennessee, thereby purposefully profiting from access to Tennessee's direct-purchaser and indirect-purchaser CRT Products markets;

      e.    Caused tortious damage in Tennessee by fixing CRT Products' prices;

      f.    Caused tortious damage in Tennessee by acts or omissions committed outside Tennessee by regularly doing or soliciting business in Tennessee; engaging in other persistent courses of conduct within Tennessee; and/or deriving substantial revenue from goods used or consumed or services rendered in Tennessee;

      g.    Committed acts and omissions that they knew or should have known would cause damage (and, in fact, caused damage) in Tennessee while regularly doing or soliciting business in Tennessee; engaging in other persistent courses of conduct in Tennessee; and/or deriving substantial revenue from goods used or consumed or services rendered in Tennessee.

91.     In formulating and effectuating their conspiracy, Defendants and their co-conspirators:

      a.     Met to discuss CRT Products customers and markets;

      b.     Agreed to charge prices at certain levels and to increase or maintain prices for CRT Products sold in Tennessee;

      c.     Issued price announcements, quotations, and charged prices consistent with their illegal agreement; and

      d.     Allocated CRT Products' markets and customers consistent with their illegal agreement.

92.     Defendants' conspiracy had the following substantial effects on Tennessee trade and commerce:

      a.     CRT Products' price competition was restrained, suppressed, and eliminated in Tennessee;

      b.     CRT Products' prices were raised, fixed, maintained, and stabilized at artificially high levels in Tennessee;

      c.     Plaintiffs and class members who indirectly purchased CRT Products were deprived of free and open market competition in Tennessee and were injured; and

      d.     Plaintiffs and class members paid more than they otherwise would have for CRT Products that they purchased indirectly in Tennessee.

93.     As a direct and proximate result of Defendants' TTPA violations, Plaintiff and the other Tennessee class members have suffered injuries and seek damages in an amount necessary to restore them to the position they would have been in had Defendants not violated the TTPA.

## COUNT II

## UNJUST ENRICHMENT

94.     Plaintiff repeats and re-alleges paragraphs 1 through 80.

95.     As the result of Defendants' illegal agreement, contract, combination, and conspiracy, Plaintiff and the class members conferred a benefit upon Defendants, and Defendants received and retained this benefit under such circumstances that it would be inequitable and unconscionable to permit Defendants to retain this benefit without paying its reasonable value to Plaintiff and the class members.

96.     As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and the class members suffered injury and seek an order directing Defendants to return to them the amount each of them improperly paid to Defendants, plus interest.

## X.  JURY DEMAND

Plaintiff demands trial by jury on all triable issues.

## IX.  PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court enter judgment in the class members' favor and against Defendants, as follows:

A.     That this Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure and certify the Tennessee class;

B.     That this Court rule that Defendants' conspiracy violated Tennessee law and that compensatory damages, including treble damages, are appropriate;

C.     That this Court determine that Defendants were unjustly enriched;

D.     That this Court permanently enjoin Defendants from conspiring to fix CRT Products' prices and allocating CRT Products' markets or other injunctive relief as this Court deems appropriate;

E.     That this Court award Plaintiff post-judgment interest, his costs, and reasonable attorneys' fees; and

F.     That this Court order any other relief as it deems just and proper.

Respectfully submitted, this 10th day of January, 2008

Gordon Ball
**BALL & SCOTT**
Suite 601, 550 Main Ave.
Knoxville, TN 37902
Telephone:   (865) 525-7028
Facsimile:    (865) 525-4679
E-mail:        gball@ballandscott.com

Daniel R. Karon
**GOLDMAN SCARLATO & KARON, P.C.**
55 Public Square, Suite 1500
Cleveland, OH  44113-1998
Telephone:     (216) 622.1851
Facsimile:      (216) 622-1852
E-mail:          karon@gsk-law.com

Krishna B. Narine
**LAW OFFICE OF KRISHNA B. NARINE**
7839 Montgomery Ave.
Elkins Park, PA 19027
Telephone:     (215) 771-4988
Facsimile:      (215) 782-3241
E-mail:          knarine@kbnlaw.com

-28-

Isaac L. Diel
**SHARP McQUEEN**
135 Oak Street
Bonner Springs, KS  66012
Telephone:      (913) 383-8711
Facsimile:      (913) 422-0307
E-mail:          dslawkc@aol.com

Donna F. Solen
**THE MASON LAW FIRM, LLP**
1225 19th Street, N.W.
Suite 500
Washington, DC 20036
Telephone:      (202) 640-1162
Facsimile:      (202) 429-2294
E-Mail:          dsolen@masonlawdc.com

*Attorneys for Plaintiff and the Class*

2:08-CV-11

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

CHARLES BENSON, on behalf of himself and all others similarly situated,

**(b)** County of Residence of First Listed Plaintiff   Cocke
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

W. Gordon Ball, Ball & Scott Law Offices, Suite 601, Bank of America Center, 550 Main Street, Knoxville, TN 37902

## DEFENDANTS

CHUNGHWA PICTURE TUBES, LTD., ET AL.

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☒ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC 1332(d)

Brief description of cause:
Price-fixing action under state antitrust laws

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**   over $5,000,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____ DOCKET NUMBER _____

DATE   01-14-08

SIGNATURE OF ATTORNEY OF RECORD   _Gordon Ball_

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| CHARLES BENSON, on behalf of himself and all others similarly situated, | ) ) | |
| | ) | Case No. 2:08-CV-00011 |
| Plaintiff, | ) | (Greer/Inman) |
| | ) | |
| v. | ) | |
| | ) | |
| CHUNGHWA PICTURE TUBES, LTD.; TATUNG COMPANY OF AMERICA, INC.; L.G. ELECTRONICS, INC.; LG PHILLIPS DISPLAY USA, INC.; MATSUSHITA ELECTRICAL INDUSTRIAL CO. LTD.; PANASONIC CORPORATION OF NORTH AMERICA; KONINKLIJKE PHILIPS ELECTRONICS N.V.; PHILIPS ELECTRONICS NORTH AMERICA CORPORATION; SAMSUNG ELECTRONICS CO.; SAMSUNG ELECTRONICS AMERICA, INC.; SAMSUNG SDI CO. LTD. f/k/a SAMSUNG DISPLAY DEVICE CO.; TOSHIBA CORPORATION; TOSHIBA AMERICA ELECTRONICS COMPONENTS, INC.; TOSHIBA AMERICA INFORMATION SYSTEMS, INC.; MT PICTURE DISPLAY COMPANY;  MT PICTURE DISPLAY CORPORATION OF AMERICA (New York);  MT PICTURE DISPLAY CORPORATION OF AMERICA (Ohio) and LP DISPLAYS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

## JOINT MOTION FOR ENLARGEMENT OF TIME TO ANSWER, MOVE OR OTHERWISE RESPOND TO THE COMPLAINT

Defendant, Panasonic Corporation of North America ("PNA"), by counsel, and

Plaintiff, Charles Benson, by counsel, jointly move this Court to enlarge the time within

which PNA has to answer, move or otherwise respond to the Complaint in this action.  In

support of this Joint Motion and for a more particular statement of the relief sought, the

parties state as follows:

1.    Plaintiff, Charles Benson, filed a Complaint in the above-captioned case on or about January 10, 2008;

2.    Plaintiff alleged antitrust violations by manufacturers, distributors, and sellers of Cathode-Ray Tubes and products containing Cathode-Ray Tubes (collectively "CRT products");

3.    More than thirty (30) complaints of a similar nature have been filed to date in federal district courts throughout the United States by plaintiffs purporting to bring class actions on behalf of direct and indirect purchasers alleging antitrust violations by manufacturers, distributors, and sellers of CRT products (collectively "the CRT Cases");

4.    Motions have been filed before the Judicial Panel on Multidistrict Litigation to transfer the CRT cases to various jurisdictions for coordinated and consolidated pretrial proceedings pursuant to 28 U.S.C. §1407;

5.    Oral argument regarding the aforementioned motions was held before the Judicial Panel on Multidistrict Litigation on January 30, 2008, and the various parties to the CRT cases anticipate a decision from the Judicial Panel on Multidistrict Litigation on where the CRT cases will be coordinated and consolidated for pretrial proceedings pursuant to 28 U.S.C. § 1407 in the coming weeks;

6.    Plaintiff may file Consolidated Amended Complaints in the CRT cases;

7.    Plaintiff and PNA agree that an orderly schedule for any response to the pleadings in the CRT Cases would be more efficient for the parties and for the Court;

8.    Plaintiff is agreeable to extending the deadline for PNA to answer, move, or otherwise respond to the Complaint until the earliest of (1) forty-five (45) days after the

filing of a consolidated Amended Complaint in the CRT Cases, or (2) forty-five (45) days after Plaintiff provides written notice to PNA that Plaintiff does not intend to file a consolidated Amended Complaint, provided, however, that in the event that PNA should agree to an earlier response date in any particular CRT case, PNA will respond to the Complaint in this captioned action on that earlier date;

9.      Plaintiff is agreeable to the stated extension applying, without further stipulation or Motion, to all named defendants who notify Plaintiff's counsel in writing of their intention to become subject to the agreement between PNA and Plaintiff;

10.      Plaintiff agrees that acceptance of the Agreement between Plaintiff and PNA by any party shall not constitute a waiver by PNA or any given defendant of any defense, including but not limited to the defense of lack of personal jurisdiction, subject matter jurisdiction, improper venue, sufficiency of process or service of process;

WHEREFORE, the parties respectfully request this Court order as follows:

1.      The deadline for Defendant PNA to answer, move, or otherwise respond to the Complaint be extended until the earliest of the following:  (1) forty-five (45) days after the filing of a consolidated Amended Complaint in the CRT Cases, or (2) forty-five (45) days after Plaintiff provides written notice to PNA that Plaintiff does not intend to file a consolidated Amended Complaint, provided, however, that in the event that PNA should agree to an earlier response date in any particular CRT case, PNA will respond to the Complaint in the captioned action on that earlier date.

2.      The same extension be made available for any party who provides written notification to Plaintiff's counsel of its intention to become subject to this Order.

3.      Notification to Plaintiff's counsel of acceptance of the terms of this Order does not constitute a waiver by PNA or any other named defendant of any defense, including but not limited to the defenses of lack of personal jurisdiction, subject matter jurisdiction, improper venue, sufficiency of process, or service of process.

Respectfully submitted this 4th day of February, 2008.

PAINE, TARWATER, BICKERS,
AND TILLMAN, LLP


By   /s/ Andrew R. Tillman
     Andrew R. Tillman (BPR 13979)
     1100 First Tennessee Plaza
     800 South Gay Street
     Knoxville, Tennessee  37929
     (865) 525-0880

     Steven A. Reiss
     David L. Yohai
     Weil, Gotshal & Manges LLP
     767 Fifth Avenue
     New York, New York 10153-0119
     (212) 310-8000

     Jeffrey L. Kessler
     A. Paul Victor
     Dewey & LeBoeuf LLP
     1301 Avenue of the Americas
     New York, New York 10019
     (212) 259-8000

     Attorneys for Defendant
     Panasonic Corporation of North America

BALL & SCOTT

By _____

Gordon Ball
550 Main Avenue, Suite 601
Knoxville, Tennessee 37902

Daniel R. Karon
Goldman Scarlato & Karon, P.C.
55 Public Square, Suite 1500
Cleveland, Ohio 44113-1998

Krishna B. Narine
Law Office of Kirshna B. Marine
78429 Montgomery Avenue
Elkins Park, Pennsylvania 19027

Isaac L. Diel
Sharp McQueen
135 Oak Street
Bonner Sp;rings, Kansas 66012

Donna F. Solen
The Mason Law Firm
1225 195h Street, N.W., Suite 500
Washington, D.C. 20036

Attorneys for Plaintiff Charles Benson

NY1.\1\53994\02\X0K9U2!.DOC\62110.035a    5

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and exact copy of the foregoing **JOINT MOTION FOR ENLARGEMENT OF TIME TO ANSWER, MOVE OR OTHERWISE RESPOND TO THE COMPLAINT** has been served on the parties below by placing same in the United States Mail, postage prepaid and addressing it to:

| | |
|---|---|
| Chungwa Picture Tubes, Ltd.<br>1127 Hopin Rd., Padeh City<br>Taoyuan, Taiwan, R.O.C. | Tatung Company of America, Inc.<br>2850 El Presidio St.<br>Long Beach, CA 90810 |
| LG Electronics Inc.<br>LG Twin Towers 20, Yeouido-dong<br>Yeongdeungpo-gu<br>Seoul, Korea 150-721 | LG Philips Display USA, Inc.<br>c/o LP Displays International Ltd.<br>6th Floor, ING Tower<br>308 Des Voeux Road Central<br>Sheung Wan, Hong Kong |
| Koninklijke Philips Electronics N.V.<br>Breitner Center<br>Amstelplein 2<br>Amsterdam P7 1096 BC | Philips Electronics North America<br>Corporation<br>1251 Avenue of the Americas<br>New York, NY 10020 |
| Samsung Electronics Co.<br>250, 2-ga, Taepyong-ro, Jung-gu<br>Seoul, 100-742, South Korea | Samsung Electronics America, Inc.<br>105 Challenger Rd.<br>Ridgefield Park, NJ 07660 |
| Samsung SFI Co., Ltd. f/k/a Samsung Display Device Co.<br>15 – 18th Floor<br>Samsung Life Insurance Bldg.<br>150 Taepyungro 2-Ga<br>Jung-Gu, Seoul, South Korea | Toshiba Corporation<br>1-1, Shibaura 1-Chome<br>Minato-Ku, Tokyo 105-8001<br>JAPAN |
| LP Displays International Ltd.<br>6th Floor, Ing Tower<br>308 Des Voeux Road Central<br>Sheung Wan, Hong Kong | |

This 4th day of February 2008.


/s/ Andrew R. Tillman

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
T 202.783.0800
F 202.383.6610
www.howrey.com

**FILED**

January 22, 2008

2008 JAN 28  A 9: 24

File 04008.0248

U.S. DISTRICT COURT
EASTERN DIST. TENN.

BY_____ DEPT. CLERK

2:08-cv-11

BY COURIER

Jeffrey N. Lüthi
Clerk of the Panel
Judicial Panel on Multidistrict Litigation
Thurgood Marshall Federal Judiciary
Building One Columbus Circle, NE
Room G-255, North Lobby
Washington, DC 20002-8004

Re: IN RE: Cathode Ray Tube (CRT) Antitrust Litigation – MDL No. 1917

Dear Mr. Lüthi :

Enclosed for filing on behalf of Defendant Philips Electronics North America Corporation a/k/a PENAC, please find for filing an original and four (4) copies of the following documents which relate to the above-captioned matter:

(1)     Notice of Appearance;

(2)     Notice of Presentation or Waiver of Oral Argument

(3)     Rule 5.3 Corporate Disclosure Statement;

(4)     Philips Electronics North America Corporation's Interested Party Response to: (1) Plaintiff Crago, Inc.'s Motion for Transfer of Actions to the Northern District of California for Coordinated or Consolidated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407, and (2) New York Direct Purchaser Plaintiff's Motion for Transfer of Actions to the Southern District of New York Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings, (3) Plaintiff Princeton Display Technologies, Inc.'s Motion for Transfer and Consolidation of Related Antitrust Actions to the District of New Jersey Pursuant to 28 U.S.C. § 1407, (4) Plaintiff Glanz's Interested Party Response Concurring in the 28 U.S.C. Motion to Transfer but Seeking Transfer and Consolidation in the District of South Carolina; and (5) Plaintiff Wettstein & Sons, Inc.'s Interested Party Response Concurring in the 28 U.S.C. Motion to Transfer but Seeking Transfer and Consolidation in the District of Minnesota; Schedule of Actions;

(5)     Schedule of Actions; and

AMSTERDAM  BRUSSELS  CHICAGO  EAST PALO ALTO  HOUSTON  IRVINE  LONDON  LOS ANGELES
MADRID  MUNICH  NEW YORK  NORTHERN VIRGINIA  PARIS  SALT LAKE CITY  SAN FRANCISCO  TAIPEI  WASHINGTON, DC

# HOWREY LLP

January 22, 2008
Page 2

(6)     Certificate of Service.

Also enclosed is a compact disk which contains copies of the above-referenced documents in PDF format.

Respectfully submitted,

HOWREY LLP

Joseph A. Ostoyich

Enclosures

FILED

2008 JAN 28  A  9: 24

U.S. DISTRICT COURT
EASTERN DIST. TENN.

BY_____DEPT. CLERK

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

IN RE: CATHODE RAY TUB (CRT)          :          MDL DOCKET NO. 1917
ANTITRUST LITIGATION                        :

**NOTICE OF APPEARANCE ON BEHALF OF
PHILIPS ELECTRONICS NORTH AMERICA CORPORATION**

Pursuant to Rule 5.2(c) of the Rules of Procedure of the Judicial Panel on Multidistrict

Litigation, Defendant Philips Electronics North America Corporation, designates the undersigned

attorney, Joseph A. Ostoyich, to receive service at the address set forth below all pleadings,

notices, orders and other papers relating to practice before the Judicial Panel on Multidistrict

Litigation in this proceeding.

DATED: January 22, 2008                         HOWREY LLP

Joseph A. Ostoyich
John Taladay
Ethan E. Litwin
1299 Pennsylvania Ave., NW
Washington, DC 20004-2402
Tel: (202) 783-0800
Fax: (202) 383-6610
Email: ostoyichj@howrey.com
          taladayj@howrey.com
          litwine@howrey.com

MDL DOCKET NO. 1917

TO:    Clerk of the Panel
       Judicial Panel on Multidistrict Litigation
       One Columbus Circle, NE
       Thurgood Marshall Federal Judiciary Building
       Room G-255, North Lobby
       Washington, DC  20002-8004

### NOTICE OF PRESENTATION OR WAIVER OF ORAL ARGUMENT

____    This is to give notice that the following designated attorney shall PRESENT ORAL ARGUMENT at the
        Panel hearing session on behalf of the designated party/parties.  Panel Rule 16.1(e) states that:

        Except for leave of the Panel on a showing of good cause, only those parties to actions
        scheduled for oral argument who have filed a motion or written response to a motion or order
        shall be permitted to appear before the panel and present oral argument.

        Also note Rule 16.1(f) requiring counsel with like positions to confer prior to the oral
        argument for the purpose of selecting a spokesperson to avoid duplication during oral
        argument.

_X_     This is to give notice that the party/parties noted hereafter will WAIVE ORAL ARGUMENT
        pursuant to Rule 16.1(d).

____    This is to give notice that the party/parties noted hereafter will WAIVE ORAL ARGUMENT IF ALL
        OTHER PARTIES IN THIS MATTER WAIVE ORAL ARGUMENT; otherwise the following
        designated attorney shall present oral argument at the Panel hearing session on behalf of the
        designated party/parties pursuant to Rule 16.1(d).

   _1/22/08_                _Joseph Ostoyich_                _____
      Date                      Name                        Authorized Signature

Party/Parties Represented, District(s) & Civil Action Number(s) (**list even if waiving**):

       Defendant Philips Electronics North America Corporation
       *See attached for list of Actions

Name and Address of Attorney Designated to Present Oral Argument:


Telephone No.:(202) 783-0800

ORIGINAL ONLY OF ORAL ARGUMENT APPEARANCE NEEDED FOR FILING. *THIS NOTICE MUST BE
SERVED ON ALL OTHER PARTIES IN THE AFFECTED LITIGATION AND A CERTIFICATE OF SERVICE
WITH PANEL SERVICE LIST MUST BE ATTACHED TO THIS ORAL ARGUMENT APPEARANCE.*

                                                              JPML Form 9 (4/01)

## LIST OF ACTIONS

| Case Name | Docket | Filed |
|---|---|---|
| Arch Electronics, Inc. v. LG Electronics, Inc, et al. | S.D.N.Y.07-10664 | 11/29/2007 |
| Art's TV & Appliance v. Chunghwa Picture Tubes, LTD. et al | N.D. Cal. 07-6416 | 12/19/2007 |
| Benson v. Chunghwa Picture Tubes, LTD. et al. | E.D. Tenn. 08-11 | 1/14/2008 |
| Caldwell v. Matsushita Electric Industrial Co., Ltd., et al. | N.D. Cal. 07-6303 | 12/13/2007 |
| Carroll Cut-Rate Furniture v. Chunghwa Picture Tubes. Ltd.. Et al. | N.D. Cal. 08-309 | 1/16/2008 |
| Cook v. Chunghwa Picture Tubes, LTD. et al | W.D. Ark. 08-5013 | 1/11/2008 |
| Crago, Inc. v. Chunghwa Picture Tubes, LTD. et al | N.D. Cal. 07-5944 | 11/26/2007 |
| Figone v. LG Electronics, Inc., et al. | N.D. Cal. 07-6331 | 12/13/2007 |
| Glanz v. Chunghwa Picture Tubes Ltd et al | D.S.C. 07-4175 | 12/31/2007 |
| Hawel v. Chungwa Picture Tubes, Ltd., et al. | N.D. Cal. 07-6279 | 12/12/2007 |
| Industrial Computing, Inc. v. Chungwa Picture Tubes, Ltd., et al. | S.D.N.Y.07-11203 | 12/13/2007 |
| Juetten v. Chungwa Picture Tubes,  Ltd., et al. | N.D. Cal. 07-6225 | 12/10/2007 |
| Kindt v. Matsushita Electric Industrial Co, LTD. | S.D.N.Y. 07-10322 | 11/13/2007 |
| Kushner et al v. Chunghwa Picture Tubes, Ltd. et al | D. Minn. 08-1608 | 1/16/2008 |
| Meijer, Inc., et al. v. LG Electronics, Inc., et al. | S.D.N.Y. 07-10674 | 11/29/2007 |
| Monikraft, Inc v. Chunghwa Picture Tubes, LTD. et al | N.D. Cal. 07-6433 | 12/21/2007 |
| Muchnick, Inc. v. Chungwa Picture Tubes, Ltd., et al. | N.D. Cal. 07-5981 | 11/27/2007 |
| Ok TV & Appliances, LLC v. Samsung Electrionics Co., Ltd., et al. | D.N.J. 08-86 | 1/7/2008 |
| Orion Home Systems, LLC v. Chunghwa Picture Tubes, LTD. et al | N.D. Cal. 08-178 | 1/10/2008 |
| Pierce v. Bejing-Matasushita Color CRT Co., Ltd., et al. | N.D. Cal. 08-337 | 1/17/2008 |
| Princeton Display Technologies, Inc. v. Chungwa Picture Tunes, Ltd., et al. | D.N.J. 07-5713 | 11/29/2007 |
| Royal Data Services, Inc. v. Samsung Electronics Co. Ltd., et al. | D.N.J. 08-39 | 1/2/2008 |
| Slagle v. Chunghwa Picture Tubes, Ltd. et al | D. Ver. 08-05 | 1/9/2008 |
| Southern Office Supply, Inc. v. Chunghwa Picture Tubes, LTD. et al | N.D. Ohio 08-62 | 1/10/2008 |
| Wettstein & Sons, Inc. v. Chunghwa Picture Tubes, Ltd., et al. | D. Minn. 07-4889 | 12/18/2007 |

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Richard W. Wieking
Clerk

450 Golden Gate Avenue
San Francisco, CA 94102
415.522.2000

18 March 2008

U.S. District Court
220 West Depot Street, Suite 200
Greeneville, TN 37743

Re:    MDL 1917 In re Cathode Ray Tube (CRT) Antitrust Litigation

Title of Case(s)
*Charles Benson -v- Chunghwa Picture Tubes, Ltd. et al*

Your Case Number(s)
*C.A. No. 2:08-0011*

Dear Clerk:

Enclosed is a certified copy of the order from the Judicial panel on Multidistrict Litigation transferring the above entitled action to the Northern District of California, San Francisco Division. The case has been assigned to the Honorable Samuel Conti for coordinated or consolidated pretrial processing pursuant to 28 USC §1407.

Please forward the original record and a certified copy of the docket entries in the case listed above along with the enclosed copy of this transmittal letter to:

United States District Court
Northern District of California
450 Golden Gate Avenue, P.O. Box 36060
San Francisco, CA 94102
Attn: MDL Clerk

If the case is an electronic case filing please do one of the following: 1) electronically transfer the case via ECF by contacting our Automation Department at ecfhelpdesk@cand.uscourts.gov; 2) e-mail the PDF documents, as separate PDF files,  including a PDF copy of the docket sheet to SFmdl_clerk@cand.uscourts.gov; 3) provide the PDF documents on a disc; or 4) provide us with a temporary log in and a password to directly access your database to expedite the downloading of the PDF files we need and/or require,  We appreciate your prompt attention to this matter.

Sincerely yours,
Richard W. Wieking, Clerk

*R. C. Santos*

For Simone Voltz
Deputy Clerk

Encl.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

CHARLES BENSON                    )
                                  )
V.                                )              NO. 2:08-CV-11
                                  )
CHUNGHWA PICTURE TUBES,           )
LTD, ET AL                        )

O R D E R

The defendant Panasonic Corporation of North America ("PNA") and plaintiff have

filed a Joint Motion [Doc. 7] seeking an extension of time for PNA to answer the complaint.

At present, there are more than 30 similar complaints ("CRT Cases") which have been filed

in various United States District Courts throughout the United States. Motions have been

filed with the Judicial Panel on Multidistrict Litigation ("JPML") to transfer all of these cases

to various jurisdictions for coordinated and consolidated pretrial proceedings. Oral argument

was held before the JPML on January 30, 2008, and a decision is expected in the coming

weeks.

PNA has requested, and the plaintiff has agreed to, an extension of time until the

earliest of (1) forty-five (45) days after filing of a consolidated Amended Complaint in the

CRT Cases, or (2) forty-five (45) days after plaintiff provides written notice to PNA that

plaintiff does not intend to file a consolidated Amended Complaint, provided, however, that

in the event that PNA should agree to an earlier response date in any particular CRT case,

PNA will respond to the complaint in this case on that earlier date.

It appears that it is in the best interests of PNA and all other defendants in this action

to allow the extension. The Joint Motion is GRANTED, and the deadline to respond for all

defendants is extended as set forth above.  In the event there has been no ruling by the JPML

in the meanwhile, counsel for plaintiff and PNA shall initiate a telephonic status conference

with the undersigned's Law Clerk, Mr. John Marshall Smith, on April 7, 2008, at 10:00 a.m.,

to discuss the posture of this action.

SO ORDERED:


 s/ Dennis H. Inman
United States Magistrate Judge

2

# UNITED STATES JUDICIAL PANEL
on
# MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge John G. Heyburn II
United States District Court
Western District of Kentucky

**MEMBERS:**
Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

Judge Anthony J. Scirica
United States Court of Appeals
Third Circuit

**DIRECT REPLY TO:**

Jeffery N. Lüthi
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax:          [202] 502-2888
http://www.jpml.uscourts.gov

March 14, 2008

Richard W. Wieking, Clerk
Phillip Burton U.S. Courthouse
Box 36060
450 Golden Gate Avenue
San Francisco, CA 94102-3489

RECEIVED

MAR 1 7 2008

Clerk, U.S. District Court
Eastern District of Tennesse

Re: MDL No. 1917 -- IN RE: Cathode Ray Tube (CRT) Antitrust Litigation

2:08-cv-11

(See Attached CTO-1)

Dear Mr. Wieking:

I am enclosing a certified copy and one additional copy of a conditional transfer order filed by the Panel in the above-captioned matter on  February 27, 2008 . As stipulated in Rule 7.4(a) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), transmittal of the order has been stayed 15 days to give any party an opportunity to oppose the transfer. The 15-day period has now elapsed, no opposition was received, and the order is directed to you for filing.

The Panel's governing statute, 28 U.S.C. §1407, requires that the transferee clerk "...transmit a certified copy of the Panel's order to transfer to the clerk of the district court from which the action is being transferred."

A list of involved counsel is attached.

Very truly,

Jeffery N. Lüthi
Clerk of the Panel

By

Deputy Clerk

Attachment

cc:  Transferee Judge:       Judge Samuel Conti
     Transferor Judges:      (See Attached List of Judges)
     Transferor Clerks:      (See Attached List of Clerks)

JPML Form 36

A CERTIFIED TRUE COPY

MAR 1 4 2008

ATTEST
FOR THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FEB 2 7 2008

FILED
CLERK'S OFFICE

# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

IN RE: CATHODE RAY TUBE (CRT)
ANTITRUST LITIGATION

$2.08$-$cv$-$11$

MDL No. 1917

$C$ $07$-$5944$ $SC$

(SEE ATTACHED SCHEDULE)

**FILED**

MAR 1 8 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## CONDITIONAL TRANSFER ORDER (CTO-1)

On February 15, 2008, the Panel transferred one civil action to the United States District Court for the Northern District of California for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* ___F.Supp.2d___ (J.P.M.L. 2008). With the consent of that court, all such actions have been assigned to the Honorable Samuel Conti.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the action previously transferred to the Northern District of California and assigned to Judge Conti.

Pursuant to Rule 7.4 of the <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation</u>, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Northern District of California for the reasons stated in the order of February 15, 2008 and, with the consent of that court, assigned to the Honorable Samuel Conti.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Northern District of California. The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

Inasmuch as no objection is
pending at this time, the
stay is lifted.

MAR 1 4 2008

CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

I hereby certify that the annexed
instrument is a true and correct copy
of the original on file in my office.
ATTEST:
RICHARD W. WIEKING
Clerk, U.S. District Court
Northern District of California
By_____
Deputy Clerk
Date 02/18/08

**IN RE: CATHODE RAY TUBE (CRT)**
**ANTITRUST LITIGATION**                                    MDL No. 1917

## SCHEDULE CTO-1 - TAG-ALONG ACTIONS

**DIST. DIV. C.A. #**          **CASE CAPTION**

ARKANSAS WESTERN
  ARW  5  08-5013           Jerry Cook v. Chunghwa Picture Tubes, Ltd., et al.

ARIZONA
  AZ  2  08-55              Brian A. Luscher, et al. v. Chunghwa Picture Tubes, Ltd., et al.

MINNESOTA
  MN  0  07-4889            Wettstein & Sons, Inc., etc. v. Chunghwa Picture Tubes, Ltd., et al.
  MN  0  08-160             Barry Kushner, et al. v. Chunghwa Picture Tubes, Ltd., et al.

NEW JERSEY
  NJ  2  07-5713            Princeton Display Technologies, Inc. v. Chunghwa Picture Tubes, Ltd., et al.
  NJ  2  08-39              Royal Data Services, Inc. v. Samsung Electronics Co., Ltd., et al.
  NJ  2  08-86              OK TV & Appliances, LLC v. Samsung Electronics Co., Ltd., et al.

NEW YORK SOUTHERN
  NYS  1  07-10664          Arch Electronics, Inc. v. LG Electronics, Inc., et al.
  NYS  1  07-10674          Meijer, Inc., et al. v. LG Electronics, Inc., et al.
  NYS  1  07-11203          Industrial Computing, Inc. v. Chunghwa Picture Tubes, Ltd., et al.

OHIO NORTHERN
  OHN  1  08-62             Southern Office Supply, Inc. v. Chunghwa Picture Tubes, Ltd., et al.

SOUTH CAROLINA
  SC  4  07-4175            Greg A. Glanz v. Chunghwa Picture Tubes, Ltd., et al.

TENNESSEE EASTERN
  TNE  2  08-11             Charles Benson v. Chunghwa Picture Tubes, Ltd., et al.

VERMONT
  VT  2  08-5               Margaret Slagle v. Chunghwa Picture Tubes, Ltd., et al.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FEB 2 7 2008

FILED
CLERK'S OFFICE

UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

IN RE: CATHODE RAY TUBE (CRT)
ANTITRUST LITIGATION

MDL No. 1917

(SEE ATTACHED SCHEDULE)

2:08-cv-11

### CONDITIONAL TRANSFER ORDER (CTO-1)

On February 15, 2008, the Panel transferred one civil action to the United States District Court for the Northern District of California for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* ___F.Supp.2d___ (J.P.M.L. 2008). With the consent of that court, all such actions have been assigned to the Honorable Samuel Conti.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the action previously transferred to the Northern District of California and assigned to Judge Conti.

Pursuant to Rule 7.4 of the <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation</u>, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Northern District of California for the reasons stated in the order of February 15, 2008, and, with the consent of that court, assigned to the Honorable Samuel Conti.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Northern District of California. The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

Inasmuch as no objection is
pending at this time, the
stay is lifted.

MAR 1 4 2008

CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

IN RE: CATHODE RAY TUBE (CRT)
ANTITRUST LITIGATION                    MDL No. 1917

## SCHEDULE CTO-1 - TAG-ALONG ACTIONS

**DIST. DIV. C.A. #**          **CASE CAPTION**

ARKANSAS WESTERN
  ARW  5   08-5013          Jerry Cook v. Chunghwa Picture Tubes, Ltd., et al.

ARIZONA
  AZ  2   08-55             Brian A. Luscher, et al. v. Chunghwa Picture Tubes, Ltd., et al.

MINNESOTA
  MN  0   07-4889          Wettstein & Sons, Inc., etc. v. Chunghwa Picture Tubes, Ltd., et al.
  MN  0   08-160           Barry Kushner, et al. v. Chunghwa Picture Tubes, Ltd., et al.

NEW JERSEY
  NJ  2   07-5713          Princeton Display Technologies, Inc. v. Chunghwa Picture Tubes, Ltd., et al.
  NJ  2   08-39            Royal Data Services, Inc. v. Samsung Electronics Co., Ltd., et al.
  NJ  2   08-86            OK TV & Appliances, LLC v. Samsung Electronics Co., Ltd., et al.

NEW YORK SOUTHERN
  NYS  1   07-10664        Arch Electronics, Inc. v. LG Electronics, Inc., et al.
  NYS  1   07-10674        Meijer, Inc., et al. v. LG Electronics, Inc., et al.
  NYS  1   07-11203        Industrial Computing, Inc. v. Chunghwa Picture Tubes, Ltd., et al.

OHIO NORTHERN
  OHN  1   08-62           Southern Office Supply, Inc. v. Chunghwa Picture Tubes, Ltd., et al.

SOUTH CAROLINA
  SC  4   07-4175          Greg A. Glanz v. Chunghwa Picture Tubes, Ltd., et al.

TENNESSEE EASTERN
  TNE  2   08-11           Charles Benson v. Chunghwa Picture Tubes, Ltd., et al.

VERMONT
  VT  2   08-5            Margaret Slagle v. Chunghwa Picture Tubes, Ltd., et al.

IN RE: CATHODE RAY TUBE (CRT)
ANTITRUST LITIGATION                                        MDL No. 1917

## INVOLVED JUDGES LIST (CTO-1)

Hon. Jimm Larry Hendren
Chief Judge, U.S. District Court
559 John Paul Hammerschmidt Federal
Building
35 East Mountain Street
Fayetteville, AR 72701

Hon. Frederick J. Martone
U.S. District Judge
U.S. District Court
526 Sandra Day O'Connor U.S. Crths.
401 West Washington St., SPC62
Phoenix, AZ 85003-2158

Hon. Michael James Davis
U.S. District Judge
14E U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

Hon. Stanley R. Chesler
U.S. District Judge
417 U.S. Post Office & Courthouse
Two Federal Square
Newark, NJ 07102-3513

Hon. Joseph A. Greenaway, Jr
U.S. District Judge
411 U.S. Post Office & Courthouse
Two Federal Square
Newark, NJ 07102

Hon. George B. Daniels
U.S. District Judge
630 Daniel Patrick Moynihan U.S.
Courthouse
500 Pearl Street
New York, NY 10007-1312

Hon. Donald C. Nugent
U.S. District Judge
15A Carl B. Stokes U.S. Courthouse
801 West Superior Avenue
Cleveland, OH 44114-1842

Hon. Terry L. Wooten
U.S. District Judge
P.O. Box 2557
Florence, SC 29503-2557

Hon. J. Ronnie Greer
U.S. District Judge
405 James H. Quillen U.S. Courthouse
220 West Depot Street
Greeneville, TN 37743

Hon. William K. Sessions, III
Chief Judge, U.S. District Court
P.O. Box 928
Burlington, VT 05402

**IN RE: CATHODE RAY TUBE (CRT)
ANTITRUST LITIGATION**

MDL No. 1917

## INVOLVED CLERKS LIST (CTO-1)

Christopher R. Johnson, Clerk
523 John Paul Hammerschmidt
Federal Building
35 East Mountain Street
Fayetteville, AR 72701-6420

Richard H. Weare, Clerk
130 Sandra Day O'Connor U.S.
Courthouse, SPC 1
401 West Washington Street
Phoenix, AZ 85003-2118

Richard Sletten, Clerk
202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

William T. Walsh, Clerk
Martin Luther King, Jr. Fed.
Bldg. & U.S. Courthouse
50 Walnut Street, 4th Floor
Newark, NJ 07102

J. Michael McMahon, Clerk
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007-1312

Geri M. Smith, Clerk
United States District Court
2-161 Carl B. Stokes U.S. Courthouse
801 West Superior Avenue
Cleveland, OH 44113

Larry W. Propes, Clerk
P.O. Box 2317
Florence, SC 29503-2317

Patricia L. McNutt, Clerk
U.S. Courthouse
220 West Depot Street
Suite 200
Greeneville, TN 37743

Richard P. Wasko, Clerk
P.O. Box 945
Burlington, VT 05402

IN RE: CATHODE RAY TUBE (CRT)
ANTITRUST LITIGATION

MDL No. 1917

## INVOLVED COUNSEL LIST (CTO-1)

Lee Albert
MAGER & GOLDSTEIN LLP
1818 Market Street
Suite 3710
Philadelphia, PA 19103

Gordon Ball
BALL & SCOTT
550 Main Avenue
Suite 601
Knoxville, TN 37902

Joseph M. Barton
GOLD BENNETT CERA & SIDENER LLP
595 Market Street
Suite 2300
San Francisco, CA 94105

Anthony J. Bolognese
BOLOGNESE & ASSOCIATES LLC
One Penn Center Plaza
1617 JFK Boulevard
Suite 650
Philadelphia, PA 19103

Jeffrey D. Bores
CHESTNUT & CAMBRONNE PA
222 South 9th Street
Suite 3700
Minneapolis, MN 55402

W. Joseph Bruckner
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401-2179

Drew A. Carson
MILLER GOLER FAEGES
27th Floor
100 Erieview Plaza
Cleveland, OH 44114

James E. Cecchi
CARELLA BYRNE BAIN GILFILLAN ET
AL
5 Becker Farm Road
Roseland, NJ 07068

Bryan L. Clobes
CAFFERTY FAUCHER LLP
1717 Arch Street
36th Floor
Philadelphia, PA 19103

Issac L. Diel
SHARP MCQUEEN P A
135 Oak Street
Bonner Springs, KS 66012

Richard Howard Epstein
SILLS CUMMIS EPSTEIN & GROSS PC
One Riverfront Plaza
13th Floor
Newark, NJ 07102-5400

Vincent J. Esades
HEINS MILLS & OLSON PLC
310 Clifton Avenue
Minneapolis, MN 55403

John G. Felder Jr.
MCGOWAN HOOD & FELDER LLC
1405 Calhoun Street
Columbia, SC 29201

Bernadette S. Gillians
BUIST MOORE SMYTHE & MCGEE
P.O. Box 999
Charleston, SC 29402

Steven Randall Hood
MCGOWAN HOOD & FELDER LLC
1539 Healthcare Drive
Rock Hill, SC 29732

**MDL No. 1917 - Involved Counsel List (CTO-1) (Continued)**

Philip E. Kaplan
KAPLAN BREWER MAXEY &
HARALSON PA
Metro Centre Mall
415 Main Street
Little Rock, AR 72201-3801

Robert N. Kaplan
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue
14th Floor
New York, NY 10022

Daniel R. Karon
GOLDMAN SCARLATO & KARON PC
55 Public Square
No. 1500
Cleveland, OH 44113

Charles M. Kester
KESTER LAW FIRM
P.O. Box 184
Fayetteville, AR 75702

Mary Gilmore Kirkpatrick
KIRKPATRICK & GOLDSBOROUGH
PLLC
1233 Shelburne Road
Suite E-1
South Burlington, VT 05403

Jeffrey A. Klafter
KLAFTER & OLSEN LLP
1311 Mamaroneck Avenue
Suite 220
White Plains, NY 10602

Mark D. Marino
KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
One Newark Center
10th Floor
Newark, NJ 07102

Bruce L. Mulkey
1039 W. Walnut
Suite 3
Rogers, AR 72756

Krishna B. Narine
2600 Philmont Avenue
Huntingdon Valley, PA 19006

Robert James Pohlman
RYLEY CARLOCK & APPLEWHITE
1 North Central Ave.
Suite 1200
Phoenix, AZ 85004-4417

Lisa J. Rodriguez
TRUJILLO RODRIGUEZ & RICHARDS
LLC
8 Kings Highway West
Haddonfield, NJ 08033

Donna F. Solen
MASON LAW FIRM LLP
1225 19th Street, N.W.
Suite 500
Washington, DC 20036

Fernando Xavier Starkes
STARKES LAW FIRM
P.O. Box 1497
Columbia, SC 29202

Andrew R. Tillman
PAINE TARWATER BICKERS &
TILLMAN
800 South Gay Street
First Tennessee Plaza, Suite 1100
Knoxville, TN 37929